UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

YEONG SOOK SHIN,

              Petitioner,

    - against -

JOSEPH T. SMITH, Superintendent of
Shawangunk Correctional Facility,

              Respondent.

-------------------------------------------------------X

**OPINION AND ORDER**

**11 Civ. 4996 (SAS)**



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Yeong Sook Shin brings this habeas corpus petition pursuant to 28

U.S.C. § 2254 (the "Petition"), challenging his state court conviction entered on

October 26, 2006, following a jury trial in New York State Supreme Court, New

York County.  Petitioner was convicted of murder in the second degree (N.Y.

Penal Law § 125.25[2]).[1]  Petitioner was sentenced to 17 ½ years to life

imprisonment.[2]

On July 5, 2011, petitioner filed the instant petition, challenging his

conviction on the following grounds: (1) the evidence of his guilt was insufficient;

--------------------------------------------------

[1]     *See* Petition for a Writ of Habeas Corpus ("Pet.") at 1.

[2]     *See id.*

and (2) ineffective assistance of appellate counsel.  For the following reasons, the Petition is denied.

## II.     BACKGROUND

### A.     The Offense Conduct

#### 1.     The Events Leading to the Offense

During the early morning hours of August 10, 1985, Binh Cu Tran was killed after being struck by a car near Columbia University.  The incident happened in the wake of an Asian student party at Columbia attended by both petitioner and Tran.  Among the attendees were several students including Ming Hsun Yang, Roger Chang, Roger's brother Jerry Chang, Roger's cousin Chris Chang, and Jason Hsu.  Hsu was a member of the Chinese gang, the White Tigers, and he liked going to parties to pick fights.[3]  Jerry Chang did not believe his brother Robert was a White Tiger, but acknowledged that it was possible.[4]  Before entering the party, Hsu asked a young man for a cigarette.  When the man obliged, Hsu hit him, inciting others to join in beating the young man.[5]

---

[3]     *See* Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opp. Mem.") at 6 (citing Transcript ("Tr.")  281-283, 285, 315).

[4]     *See id.* (citing Tr. 167-169, 302).

[5]     *See id.* (citing Tr. 284, 315-316).

By the time the group had entered the party, there were roughly two-hundred people in attendance.[6]  Hsu approached Yang and Roger Chang and told Roger to punch a man on the dance floor that had been "staring" at him.  Roger punched the man, and soon police officers were on the premises, trying to determine who started the fight.[7]  The party was then shut down by school authorities, and party-goers headed outside to Broadway and 115th Street.[8]  As Yang waited for his ride, Hsu yelled that "[t]his guy say Chinese Chink," at which time Hsu, Yang and the rest of their group ran after a few people down 115th Street.[9]  They beat one of the people they were chasing and then began walking back, but soon became involved in another fight in the middle of the crosswalk.[10]  One witness, Deanna Vongutfeld, lived on the eleventh floor of 600 West 115th

---

[6]     *See id.* (citing Tr. 97, 170-171, 285).

[7]     *See id.* at 7 (citing Tr. 286-287, 322-323, 287-288).

[8]     *See id.* (citing Tr. 68-69).

[9]     *See id*. (citing Tr. 288, 323).

[10]    *See id.* at 8 (citing Tr. 289-293, 305-307, 324-325). Hsu's group believed the people they were fighting were Korean.

Street.[11]   She heard noises from the street below and looked out of her kitchen window to see a group of people fighting, some of whom were in the street.[12]

### 2.     The Incident Involving Shin's Corvette

At the same time as Vongutfeld heard the commotion outside of her window, Hsu, Yang, Roger Chang, Chris Chang and other party-goers began walking back toward the east side of Broadway.[13]   Vongutfeld heard a car "rev" its engine and saw it "take off" toward the people in the street.[14]   Hsu reportedly yelled "watch out."[15]   Another witness, Judith Lim, also heard revving sounds coming from a silver car that then "accelerated."[16]   Shin, who was driving his father's silver Corvette, proceeded to gun the engine and drive into the group crossing the street.   Shin hit Roger Chang, Hsu, Chris Chang, Yang, and Binh Cu Tran.[17]   Shin did not attempt to brake or avoid the pedestrians, nor did Shin honk

---

[11]      *See id.* (citing Tr. 433-434, 437-440).

[12]      *See id.*

[13]      *See id.* (citing Tr. 293, 294).

[14]      *See id.* (citing Tr. 438-441).

[15]      *Id.* (citing Tr. 294, 308, 317-318, 330-331, 336).

[16]      *Id.* (citing Tr. 152-153, 161).

[17]      Shin was not charged at the time of the arrest with the injuries sustained by any victim other than Binh Cu Tran because the statute of limitations had run on charges other than murder.  *See* Pet. at 7.

his horn or slow down.[18]  Bin Cu Tran ended up on the hood of Shin's car, holding

on for about three-quarters of a block.[19]  Tran then lost his grip, fell underneath the

vehicle, and was killed.[20]  Shin did not slow or stop the car, but continued heading

north on Broadway.  Police followed Shin, but lost track of the Corvette, which

was said to be traveling at a speed of between 50-60 miles per hour.[21]  Shin drove

back to a parking lot on the lower east side of Manhattan and stayed at a friend's

house for a few days before fleeing to California.[22]  He remained in California for

seven years.  While in California, Shin found God and became an active

Christian.[23]  Before returning to New York, where he worked as an assistant pastor,

Shin spent time in the Philippines performing missionary work.[24]

On May 27, 2005, detectives from the Police Department's Latent

Print Unit found a match for a fingerprint lifted from the Corvette linked to the

---

[18]     See id. at 9 (citing Tr. 73, 101, 105, 107, 121, 152-156, 162 172-173, 177, 296, 310, 439-330)

[19]     *See id.* (citing Tr. 70-71, 78-79, 89-90).

[20]     A toxicology report showed that Tran had no drugs or alcohol in his system on the night of his death. *See* Tr. 474, 487-488.

[21]     *See* Opp. Mem. at 9 (citing Tr. 201-203, 213, 217).

[22]     *See id*. at 15 (citing Tr. 354-356, 397-398).

[23]     *See id.* at 19 (citing Tr. 502-503).

[24]     *See id*. (citing Tr. 503-504, 505, 565).

1985 incident.  From this fingerprint, detectives were able to track petitioner to his address in Fresh Meadows, Queens.[25]  Shin agreed to go with the detectives to the 26th Precinct stationhouse to answer questions.[26]  He was read his Miranda rights, signed the Miranda form, and agreed to speak with the police without an attorney present.  Shin requested that Detective Rivera write out his statement as he spoke instead of writing it out himself.[27]  Shin admitted that it was he who had hit the pedestrians with his car that night, but that it was an accident.  Further, Shin stated that he fled New York out of fear of retaliation from gang members.[28]

### B.    Procedural History

#### 1.    Direct Appeal

Shin, through counsel, appealed his conviction to the Appellate Division, First Department, raising the following claims: (1) that there was legally insufficient evidence of his guilt of second-degree murder because the People did not adequately prove that petitioner had a mental state of depraved indifference to human life; (2) the verdict was against the weight of the evidence; and (3) the

---

[25]     *See id*. at 14 (citing Tr. 343-346).

[26]     *See id.* (citing Tr. 345-348, 399-400, 417, 422-423).

[27]     *See id*. at 15 (citing Tr. 349-353, 400-401, 417-418, 423-425).

[28]     *See* Pet. at 6.

judge's charge with respect to the mens rea element of depraved indifference murder was incorrect.

On April, 23, 2009, the Appellate Division unanimously affirmed Shin's conviction.[29]  The court found that petitioner's claim regarding the legal sufficiency of the evidence was unpreserved for appellate review and that even if it were preserved, the court would have rejected it on the merits.[30]  Further, the court found that the verdict was not against the weight of the evidence.  "The evidence, which included the testimony of numerous eyewitnesses as well as defendant's statements to the police and his own trial testimony, established that defendant acted with an 'utter disregard for the value of human life,' as required to establish that he acted with the culpable mental state of depraved indifference."[31]  The evidence revealed that Shin drove at a fast speed into a crowd of young adults, failed to honk his horn, and did not apply his brakes or swerve to avoid hitting the pedestrians.[32]  Moreover, even when the decedent was holding on to the hood of

---

[29]     *See People v. Yeong Sook Shin*, 877 N.Y.S.2d 85 (1st Dep't 2009).

[30]     *See id.*

[31]     *Id.* (quoting *People v. Feingold*, 7 N.Y.3d 288, 296 (2007)).

[32]     The evidence presented at trial showed that there were no skid marks at the scene of the crime (*see* Tr. 231, 244-245) and that an examination of the Corvette by the NYPD Accident Investigation Squad found that the car's accelerator,

his car, Shin did not stop the car.  Shin finally fled the scene, which showed that he acted with utter disregard for human life.[33] Lastly, the Appellate Division held that petitioner had "expressly waived any objection to the court's charge on depraved indifference" because petitioner's trial counsel had affirmatively approved the charge.  Even if petitioner had not expressly waived this objection, the court found this claim to be meritless because the charge consisted of proper standards and followed the language used by the Court of Appeals.[34]  On July 13, 2009, the New York Court of Appeals denied defendant's motion for leave to appeal.[35]

### 2.    The Coram Nobis Application

On September 29, 2010, Shin filed an application in the Appellate Division for a writ of error coram nobis, challenging appellate counsel's failure to raise ineffective assistance of trial counsel claims, including a claim based on trial counsel's alleged failure to properly preserve the sufficiency of evidence claim. Further, petitioner argued that trial counsel had failed to object to the admission of

---

braking system, and steering mechanism were all working properly.  The only damage to the car was a cracked windshield and a broken headlight (*see* Tr. 266, 269, 270, 272, 274-275).

[33]    *See Shin*, 877 N.Y.S.2d at 86.

[34]    *See id.*

[35]    *See People v. Yeong Sook Shin*, 884 N.Y.S. 2d 711 (2009).

evidence that four other people were injured by his car when he drove into the crowd of pedestrians.  Additionally, Shin argued that appellate counsel should have argued on appeal that the trial judge committed reversible error because: (1) the judge did not read the jury notes into the record or allow trial counsel to read the notes; and (2) the judge's instruction to the jury on the mens rea requirement for depraved indifference impermissibly amended the theory of the indictment.  On February 1, 2011, the Appellate Division denied Shin's coram nobis petition.[36]  On June 30, 2011, the New York Court of Appeals denied petitioner's application for leave to appeal.[37]  Shin filed this timely habeas petition on July 5, 2011.

## III.   LEGAL STANDARDS

### A.   Deferential Standard for Federal Habeas Review

This petition is governed by the Antiterrorism and Effective Death  Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court may grant a writ of habeas corpus to a state prisoner only if the state court's adjudication of a particular claim, on the merits in a state court proceeding, resulted in a decision that:  (1) "'was contrary to, or involved an unreasonable

---

[36]   *See* 2/1/11 Order Denying Petitioner's Coram Nobis Petition, Ex. 10 to Opp. Mem.

[37]   *See People v. Yeong Sook Shin*, 12 N.Y.3d 930 (2011).

application of, clearly established Federal law, as determined by the Supreme Court of the United States;'"[38] or (2) "'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[39]

With respect to subsection 2254(d)(1), the Supreme Court has explained that a state court decision is "contrary to" clearly established federal law in the following instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[40]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the

---

[38]    *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010) (quoting 28 U.S.C. § 2254(d)(1)). *Accord Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).

[39]    *Berghuis*, 130 S. Ct. at 2259 (quoting 28 U.S.C. § 2254(d)(2)).

[40]    *Williams v. Taylor*,  529 U.S. 362, 405 (2000).

state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[41]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous: "[t]he state court's application of clearly established law must be *objectively unreasonable*."[42]  This standard "'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"[43]  While the test requires "'[s]ome increment of incorrectness beyond error, . . . the increment need not be great; otherwise *habeas* relief would be limited

---

[41]    *Id.* at 407.

[42]    *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added).  *Accord Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007));  *Williams*, 529 U.S. at 409;  *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[43]    *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

to state court decisions so far off the mark as to suggest judicial incompetence.'"[44]

Furthermore, section 2254(d) applies to a defendant's habeas petition even where the state court order does not include an explanation of the court's reasoning.[45]

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for [section] 2254(d) applies when a 'claim,' not a component of one, has been adjudicated.[46]

Section 2254(d) also applies where a state court does not explicitly state in its opinion that it is adjudicating a claim on the merits.[47]  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[48]

---

[44]    *Jones*, 229 F.3d at 119 (quoting *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citations omitted)).

[45]    *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

[46]    *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent.")).

[47]    *See id.*

[48]    *Id.* at 784-85.

## B.    Exhaustion Requirement

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[49]  In order to satisfy the exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[50] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall 'well within the mainstream of constitutional litigation.'"[51]

## C.    Procedural Bar

Under the independent and adequate state law doctrine, if the last state court to render judgment clearly and expressly states that its judgment rests on a state procedural bar, federal habeas review is precluded.[52]  In fact, "[t]he Second Circuit has made clear that 'federal habeas review is foreclosed when a state court

---

[49]    28 U.S.C. § 2254(b)(1)(A).

[50]    *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

[51]    *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[52]    *See Jones v. Duncan,* 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997)).

has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'"[53]   Federal habeas review of procedurally barred claims is foreclosed unless the prisoner can demonstrate either: (1) "'cause for the default and actual prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental miscarriage of justice.'"[54]   Showing cause for a default requires a petitioner to put forth some objective factor external to the defense, explaining why the claim was not raised previously.[55]   Furthermore, a habeas petitioner may invoke the fundamental miscarriage of justice exception to the procedural bar rule only if he can demonstrate actual innocence.[56]

### D.   Ineffective Assistance of Counsel Under *Strickland v. Washington*

---

[53]   *Id.* (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)).  *Accord, e.g., Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 77-82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996).

[54]   *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617-18 (2d Cir. 1994).

[55]   *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[56]   *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner "must demonstrate (1) that his attorney's performance 'fell below an objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[57] "To satisfy the first prong – the performance prong – the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"[58] The inquiry under the performance prong is "contextual" and "asks whether defense counsel's actions were objectively reasonable considering all the circumstances."[59] "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[60]

---

[57] *Wilson v. Mazzuca*, 570 F.3d 490, 501 (2d Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). *Accord Smith v. Spisak*, 130 S. Ct. 676, 685 (2010).

[58] *Wilson*, 570 F.3d at 502 (quoting *Strickland*, 466 U.S. at 687).

[59] *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 688).

[60] *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland,* 466 U.S. at 690).

In determining what constitutes objective reasonableness, courts look to "'[p]revailing norms of practice as reflected in American Bar Association standards.'"[61]  Attorney errors that fall below an objective standard of reasonableness "include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness."[62]  "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[63] "'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[64]

To satisfy the second prong – the prejudice prong – a "defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[65]

---

[61]    *Purdy*, 208 F.3d at 44 (quoting *Strickland*, 466 U.S. at 688).

[62]    *Wilson*, 570 F.3d at 502 (citation omitted).

[63]    *Knowles*, 129 S. Ct. at 1420 (quoting *Strickland*, 466 U.S. at 689).

[64]    *Id.* (quoting *Strickland*, 466 U.S. at 688).

[65]    *Strickland*, 466 U.S. at 694 (emphasis added).

In assessing prejudice, courts review the record to determine the impact of the alleged ineffectiveness within the context of the entire trial.[66]   In other words, the "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt."[67]   Finally, a finding of lack of prejudice may precede, or preempt, the quality of representation inquiry.  The Supreme Court has stated:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.   In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.   The object of an ineffectiveness claim is not to grade counsel's performance.   If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.   Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.[68]

---

[66]   *See Berghuis*, 130 S. Ct. at 2264 ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at 695).

[67]   *Strickland*, 466 U.S. at 695.

[68]   *Id.* at 697.

Thus, if a court finds no prejudice, it need not engage in the often thorny

inquiry regarding the adequacy of counsel's performance.

## IV.   DISCUSSION

### A.      Petitioner's Insufficient Evidence Claim Is Procedurally Barred

Shin alleges that there was insufficient evidence to support his

conviction for depraved indifference murder.  Specifically, Shin argues that the

People did not prove that he had a mental state of depraved indifference to human

life because the only evidence presented regarding his mens rea came from his own

statements of remorse for what he maintains was an accident.[69]  The Appellate

Division found that Shin's insufficient evidence claim was procedurally barred.[70]

Under New York law, "in order for a criminal defendant to preserve, for appellate

review, a question of law as to the sufficiency of evidence he must make a timely

motion to dismiss that is 'sufficiently specific' to alert the trial judge to the

substance of his argument."[71]   Here, petitioner, through his trial attorney, made a

motion at the end of the People's case, but did not renew his motion at the close of

---

[69]      *See* Pet. at 18.

[70]      *See Shin*, 877 N.Y.S. 2d at 85.

[71]      *People v. Gray*, 86 N.Y.2d 10, 19-21 (1995)).

all the evidence.  The appellate court found that the claim was not only unpreserved, but that alternatively, the claim would be rejected on its merits.[72] Thus, the First Department's decision constitutes an adequate and independent state ground barring federal habeas review.[73]

Even if this claim were not barred, Supreme Court precedent holds that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[74]  Here, the prosecution presented a case showing that Shin revved his car, accelerated at a high speed, and crashed into a group of pedestrians.  He did not attempt to slow down, stop, or swerve to avoid them.  Even when the decedent was holding onto the hood of his car, Shin continued driving fast, ultimately running over the victim before fleeing the scene and evading the police.  In sum, the prosecution presented sufficient evidence for a rational trier of fact to find him guilty of depraved indifference murder.

---

[72]     *See Shin*, 877 N.Y.S. 2d at 85.

[73]     *See Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000).

[74]     *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

Finally, petitioner does not allege that there is cause for his default, nor does he allege that failure to consider this claim will result in a fundamental miscarriage of justice. Nor does petitioner claim that he is actually innocent.[75] Rather, he argues that the evidence only proves that he accidently sped his car into a group of people, injuring four and killing one – an argument the jury obviously rejected.  Consequently, Shin cannot satisfy either the cause and prejudice or actual innocence standard.  Because Shin has not made such a showing, his insufficient evidence claim is denied.

**B.     Ineffective Assistance of Counsel**

Next, Shin renews the claims he brought in his coram nobis application against his appellate counsel for failing to raise the following arguments: (1) trial counsel failed to properly preserve the legal insufficiency claim; (2) trial counsel failed to object to the admission of evidence that other pedestrians were injured by Shin[76]; (3) the trial judge committed reversible error

---

[75]     *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

[76]     Although this Court does not review these claims *de novo*, a discussion of the merits is warranted to determine if any of the alleged failures by trial counsel could have had an impact on the verdict.  If trial counsel's deficient performance could not have affected the verdict, then Shin cannot show any prejudice under the second prong of *Strickland*.  Without a showing of prejudice, there can be no ineffective assistance of trial counsel.  If trial counsel cannot be found to be ineffective, then, necessarily, appellate counsel cannot be found to be ineffective

because he did not read the jury notes into the record or allow trial counsel to read the notes; and (4) the trial judge's instruction to the jury on the mens rea requirement for depraved indifference impermissibly amended the theory of the indictment.

### 1. Trial Counsel's Failure to Renew the Motion to Dismiss Based on the Insufficiency of the Evidence

Petitioner claims ineffective assistance of appellate counsel for not raising an ineffective assistance of trial counsel claim based on trial counsel's failure to renew the motion to dismiss on the ground of insufficient evidence at the close of trial.[77]  Shin speculates that if his trial attorney had moved to dismiss on the ground of insufficient evidence, the depraved indifference count would have been dismissed.  There is nothing to suggest that this would have been the result. After finding this claim procedurally barred, the Appellate Division also found that

---

for failing to rase the ineffectiveness of trial counsel on appeal. *See Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) ("Although we do not believe trial counsel's performance was deficient, we are not required to resolve that issue. Even assuming such deficiency, the record does not show that Hemstreet suffered prejudice from any alleged omissions by his counsel. We therefore conclude that Hemstreet cannot satisfy the *Strickland* standard as to the assistance he received at trial . . . Hemstreet's inability to make this showing means that he also cannot demonstrate that his appellate counsel had any obligation to raise the issue of trial counsel's ineffectiveness on direct appeal.").

[77]     *See* Pet. at 16.

there was sufficient evidence to support the conviction.  The Appellate Division
then denied Shin's claim of ineffective assistance of appellate counsel in the coram
nobis proceedings.

   Petitioner cannot establish that his appellate counsel was ineffective
for not asserting ineffective assistance of trial counsel because the sufficiency of
the evidence claim was already rejected by the state appellate court on direct
appeal.  Moreover, even if trial counsel's performance was deficient, any alleged
deficiencies did not result in actual prejudice to petitioner because the insufficiency
of evidence claim lacked merit.  Because of the absence of prejudice arising from
any failure of trial counsel, Shin's appellate counsel's decision not to raise this
ineffective assistance of trial counsel claim on appeal cannot amount to ineffective
assistance of appellate counsel.  Accordingly, the Appellate Division's denial of
Shin's ineffective assistance of appellate counsel claim was neither contrary to, nor
an unreasonable application of, federal law.  Shin's claim is therefore denied.

   **2.**  **Trial Judge's Failure to Read the Jury Notes on the Record**

   Next, Shin argues that his appellate counsel was ineffective for not
rasing, on direct appeal, the trial judge's failure to read the jury notes into the
record, thus depriving defense counsel "of the opportunity to accurately analyze
the jury's deliberations and frame intelligent suggestions for the Court's

-22-

response."[78]  When handling jury notes, (1) the jury's inquiry should be submitted in writing; (2) the note should be read into the record in the presence of counsel and defendant; (3) counsel should be afforded the opportunity to suggest appropriate responses; and (4) after the jurors are recalled, the request should again be read in their presence to make sure that it accurately reflects their question and allows them to elaborate upon it if needed.[79]

Here, although the trial court did not follow the procedures set forth in *Ronder*, the responsibilities of the trial judge required under *Ronder* were met. Although the jury notes were not read word for word into the record, the trial judge discussed the jury notes in open court, giving trial counsel notice of the content of the notes.  With regards to the first two notes, the judge stated on the record that he had reviewed them with the parties, with no objections.[80]  The third note requested testimony to be read back.  The trial judge stated on the record which transcripts

---

[78]    *Id*. at 19.

[79]    *See United States v. Ronder*, 639 F.2d 931, 934 (2d Cir. 1981).  *See also People v. O'Rama*, 574 N.Y.S.2d 159, 162-63 (1991);  *Munoz v. Burge*, No. 02-CV-6198, 2007 WL 7244783, at *10 (E.D.N.Y. Aug. 27, 2007) report and recommendation adopted as modified, 2010 WL 3394696, at *10 (E.D.N.Y. Aug. 20, 2010), *aff'd*, 442 Fed. App'x 602 (2d Cir. 2011).

[80]    *See* Tr. 730, 738-742.

had been requested and then began the readback.[81]   The fourth note requested a read back of Shin's testimony.   The trial judge again summarized this note and then proceeded to conduct the readback.[82]  The record does not reflect that trial counsel was deprived of his opportunity to review the jury questions and suggest appropriate responses.  Rather, it was likely that these notes were discussed off the record as was the case with the first two notes.

Appellate counsel is not obligated to raise every possible claim on appeal, rather he should pursue the most effective strategy for appeal.[83]  Defense counsel's decision not to object to the trial judge summarizing the substance of these notes rather than reading them verbatim into the record was a reasonable decision given the weakness of the claim.  Moreover, because trial counsel did not object to the court's failure to allow him to review the notes, appellate counsel would have been required to show that the judge's decision was clearly erroneous – a difficult standard.   The appellate counsel's decision not to raise this claim was within his discretion and does not rise to the level of ineffective assistance.  The Appellate Division's denial of his ineffective assistance of appellate counsel claim

---

[81]     *See id*. at 747-748.

[82]     *See id*. at 749.

[83]     *See Jones v. Barnes*, 463 U.S. 745, 751,52 (1983).

was not an unreasonable application of clearly established federal law. Therefore, petitioner's application for habeas relief on this ground is denied.

### 3. Trial Counsel's Failure to Object to the Admission of the Injuries of Pedestrians Other than Decedent

Shin next focuses on appellate counsel's failure to argue on direct appeal that Shin's trial counsel was ineffective for not objecting to the admission of evidence that four other pedestrians were seriously injured in the incident, but for which Shin was not charged due to the statute of limitations. This argument is without merit. The fact that Shin drove his car into a crowd of people and hit and injured four people is directly relevant to the depraved indifference charge. Accordingly, any objection to the admission of this evidence would have been overruled by the trial judge. Because trial counsel's decision not to object to evidence of the other pedestrians' injuries did not result in any prejudice to Shin, the state court's coram nobis decision denying his ineffective assistance of appellate counsel claim was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[84]   Petitioner's application for habeas relief on this ground is denied.

---

[84]   28 U.S.C. § 2254(d).

### 4.    The Trial Judge's Charge to the Jury on the Mens Rea Element of Depraved Indifference Murder

Finally, Shin contends that his appellate counsel should have raised the argument on direct appeal that the trial judge's charge to the jury did not adequately reflect the new standard for depraved indifference murder, which was adopted just before the trial began and impermissibly amended the theory of the indictment.  The Appellate Division addressed this claim as follows:

> Defendant expressly waived any objection to the court's charge on depraved indifference, and there is no merit to his claim that he preserved his present challenge to that charge.  We decline to review this issue in the interest of justice. As an alternative holding, we find that the court's charge, which tracked the language employed by the Court of Appeals in *Feingold* and *People v . Suarez* conveyed the proper standards.[85]

The Appellate Division found that the claim was unpreserved *and* that if the court were to review the claim, the claim would be rejected.  Shin, therefore, cannot establish that appellate counsel was ineffective because appellate counsel raised the jury charge claim on appeal and the Appellate Division found this claim to be meritless.  With respect to Shin's argument that appellate counsel should have raised the claim that the jury charge impermissibly changed the theory of the

---

[85]    *Shin*, 877 N.Y.S.2d at 86.

indictment, this too lacks merit.  If anything, the additional mens rea requirement under *Feingold* created an added element that the People were required to prove. Nor has Shin shown any actual prejudice as a result of the alleged ineffective assistance.  Accordingly, because Shin has failed to show that the state court's decision denying ineffective assistance of appellate counsel was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States",[86] petitioner's application for habeas relief on this ground is denied.

## V.    CONCLUSION

For the foregoing reasons, Shin's section 2254 Petition is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[87]  A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed

---

[86]    28 U.S.C. § 2254(d).

[87]    28 U.S.C. § 2253(c)(2).

further.'"[88]   Petitioner has made no such showing.   Accordingly, I decline to grant

a certificate of appealability.   The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             June 18, 2012

---

[88]    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*,
463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)).   *Accord
Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d
207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate
whether the district court's dismissal of the petition was correct).

**-Appearances-**

**Petitioner (Pro Se):**

Yeong Sook Shin
DIN# 06-A-5857
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, NY 12051

**For Respondent:**

Allen J. Vickey
Matthew C. Williams
Assistant District Attorneys
New York County District Attorney's Office
One Hogan Place
New York, NY 10011
(212) 335-9297/9235